2025 Tex. Bus. Ct. 29



The Business Court of Texas
Eighth Division

M&M LIVESTOCK, LLC, and JOHN
MALOUFF, individually, and derivatively
on behalf of ZMDR, LLC d/b/a REPUBLIC
FOODS

*Plaintiffs*,

v.

JEREMY ROBINSON, individually,
ZMDR, LLC d/b/a REPUBLIC FOODS,
DAVID DEVITO, individually, and NMD
ENTERPRISES, LLC

*Defendants.*

Cause No. 24-BC08B-0003

§ § § § § § § § § § § § § § § § § §

---

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS' PLEA TO THE JURISDICTION

---

[¶ 1] Before the Court is Defendants' plea to the jurisdiction ("Plea") raised in their Supplemental Answer filed May 23, 2025. The Plea challenges subject matter jurisdiction on grounds that Plaintiffs have not pleaded facts sufficient to satisfy the $5 million minimum amount in controversy required by Section

25A.004(b) of the Texas Government Code. In a prior order, the Court deferred ruling on the Plea to give the parties an opportunity to amend their pleadings and provide additional jurisdictional briefing.

[¶ 2] After reviewing the parties' submissions, the Court now concludes that Plaintiffs, in their amended petition, have pleaded facts sufficient to satisfy the $5 million threshold requirement. Defendants' Plea is therefore denied.

## I. BACKGROUND

[¶ 3] This dispute arises out of the parties' ownership of a limited liability company ("LLC") formed for purposes of operating a meat processing plant in Missouri. Plaintiffs filed this action in October 2024 alleging the processing plant failed because of Defendants' gross mismanagement and depletion of company assets. Plaintiffs also seek to recover for a series of livestock sales they made to the LLC for which they have not been paid.

### A.    The parties

[¶ 4] Plaintiffs are John Malouff ("Malouff"), individually and derivatively on behalf of ZMDR, LLC d/b/a Republic Foods ("ZMDR"), and his operating company M&M Livestock, LLC ("M&M").[1]

---

[1] Amend. Pet. ¶¶ 5-6, 15.

[¶ 5] Defendants are ZMDR, David DeVito ("DeVito"), Jeremy Robinson ("Robinson"), and NMD Enterprises, LLC ("NMD").[2]

[¶ 6] ZMDR is the LLC at the heart of these disputes. It is a manager-managed LLC governed by a company agreement.[3] Its managers are Robinson and DeVito, and its current members are Malouff, Robinson, and NMD.[4] Malouff has never been a manager of ZMDR.[5]

## B. The original petition

[¶ 7] In their original petition, Plaintiffs complained that Defendants ran ZMDR into the ground through a series of managerial missteps and refused to pay Plaintiffs for livestock sales made to ZMDR.[6] These complaints were subsumed in six numbered counts:

> Count 1: breach of contract (cattle sales)
> Count 2: suit on a sworn account
> Count 3: breach of contract (company agreement)
> Count 4: fraud/fraudulent inducement
> Count 5: breach of fiduciary duty
> Count 6: unjust enrichment.[7]

[¶ 8] For damages, Plaintiffs pleaded generally for monetary relief exceeding $5 million, but identified specific damages only with respect to Counts 1, 2, and 3.[8]

---

[2] *Id.* ¶¶ 7-10.
[3] *Id.* ¶¶ 20, 23.
[4] *Id.* ¶¶ 20, 22-23.
[5] *Id.* ¶¶ 20, 22.
[6] Orig. Pet. ¶ 13.
[7] *Id.* ¶¶ 31-57.
[8] *Id.* ¶¶ 1, 35, 38-39, 45.

In Counts 1 and 2, Plaintiffs alleged $1,690,225.29 in damages pursuant to ZMDR's purported agreement to purchase M&M's cattle.[9] In Count 3, Malouff requested damages in excess of $5 million based on Defendants' alleged breaches of ZMDR's company agreement, including for failure to pay ZMDR's obligations and to maintain ZMDR's assets.[10] Plaintiffs also alleged that Malouff contributed $800,000 to ZMDR based on Defendants' agreement to fulfill their obligations under the company agreement.[11]

[¶ 9] As for subject matter jurisdiction, Plaintiffs alleged that the Court had jurisdiction over this action pursuant to Sections 25A.004(b)(1), (2), (4), and (5) of the Government Code, all of which require a minimum amount in controversy of more than $5 million.[12]

## C.    The plea to the jurisdiction

[¶ 10] In their Supplemental Answer filed May 23, 2025, Defendants disputed that this case involves more than $5 million.[13] The Court, construing this objection to be tantamount to a plea to the jurisdiction, agreed there was at least a reasonable basis to question jurisdiction.[14] Accordingly, the Court ordered the parties to brief

---

[9] *Id.* ¶¶ 21-22, 31-40.
[10] *Id.* ¶¶ 19, 41-45.
[11] *Id.* ¶ 42.
[12] *Id.* ¶ 2; TEX. GOV'T CODE ANN. §§ 25A.004(b)(1)-(7).
[13] Supp. Answer ¶ 1.
[14] Order [May 30, 2025], at 2.

the issue under Section 25A.004(b), with particular emphasis on the amount-in-controversy.[15] The parties complied by filing competing briefs.[16]

### D. The Court's order permitting repleading and additional briefing

[¶ 11] After reviewing the pleadings and briefs, the Court concluded that Plaintiffs had not pleaded facts sufficient to satisfy the minimum amount in controversy.[17] In so concluding, the Court pointed out the jurisdictional deficiencies in Plaintiffs' petition, focusing on the damages sought in Counts 1, 2, and 3 and the absence of any allegations that would measure damages by the impaired value of ZMDR or Malouff's interest in the company.[18]

[¶ 12] To reiterate, the damages sought in Counts 1 and 2 ($1,690,225.29) were not sufficient because those amounts related solely to cattle sales and do not fall within this Court's original jurisdiction as defined by subsections (b)(1), (2), (4), and (5)—namely, derivative proceedings or actions regarding the internal affairs of an organization or its owners, managers, or controllers.[19] Jurisdiction over the cattle sales claims would exist only under Section 25A.004(f)'s grant of supplemental jurisdiction, as the parties themselves acknowledged in their briefs.[20] Supplemental

---

[15] *Id.*, at 2.
[16] Plaintiffs' Brief [June 13, 2025]; Defendants' Brief [June 27, 2025].
[17] Order [July 7, 2025] ¶¶ 2, 8-13.
[18] *Id.* ¶¶ 8-13.
[19] *Id.* ¶ 8.
[20] *Id.*; Plaintiffs' Brief [June 13, 2025], at 15-17; Defendants' Brief [June 27, 2025], at 8-10, 22-25. *See* TEX. GOV'T CODE ANN. § 25A.004(f).

jurisdiction, of course, cannot exist on its own; it must be tied to some form of original jurisdiction under subsections (b), (c), or (d) of Section 25A.004.[21]

[¶ 13] The Court next turned to Count 3, which generally alleged damages "in an amount of not less than $5,000,000[.]"[22] The Court concluded that this allegation was likewise insufficient to satisfy the minimum amount in controversy because there were no specific allegations explaining how such damages resulted from any purported breaches of ZMDR's company agreement.[23] It was not enough, for example, to state that Malouff tendered a $9.5 million buyout offer without a corresponding allegation that Defendants were somehow obligated by the company agreement to accept Malouff's tender.[24]

[¶ 14] Plaintiffs, for their part, did identify in their jurisdictional briefing other plausible theories of recovery and monetary amounts, but the Court could not consider those theories or amounts because Plaintiffs did not adequately plead them in their petition.[25] For example, Plaintiffs argued in their brief about the multi-million dollar swings in ZMDR's value as evidenced by the company's balance sheets, but nowhere did Plaintiffs plead any claim to recover, on ZMDR's or

---

[21] *C Ten 31 LLC ex rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 29, 31, 708 S.W.3d 223, 236-37 (3rd Div.).
[22] Orig. Pet. ¶ 45.
[23] Order [July 7, 2025] ¶ 9.
[24] *Id.*
[25] *Id.* ¶¶ 10-13.

Malouff's behalf, damages commensurate with the impaired value of ZMDR.[26] Similarly, Plaintiffs argued in their brief that—because of Defendants' alleged breaches of contractual and fiduciary duties—Malouff now faces an $11.7 million demand for payment as guarantor of ZMDR's debt, yet Plaintiffs' original petition was missing these same allegations.[27]

[¶ 15] Even so, because Plaintiffs' allegations did not affirmatively negate jurisdiction, the Court ruled that Plaintiffs should have an opportunity to amend (as should Defendants, in turn).[28] The Plea was thus held in abeyance to permit the parties to file amended pleadings and briefing.[29]

### E.    The amended pleadings and additional briefing

[¶ 16] Plaintiffs filed their first amended petition—now their live pleading—on July 15, 2025. In essence, Plaintiffs endeavored to cure the deficiencies in their original petition while continuing to plead that the Court has jurisdiction pursuant to Sections (b)(1), (2), (4), and (5).[30] Plaintiffs bolstered their fiduciary duty and contract claims by alleging new supporting facts—like Malouff's personal guaranty on the loan—and new theories of recovery—like asset diminution—as well as

---

[26] Order [July 7, 2025] ¶¶ 11-13; Plaintiffs' Brief [June 13, 2025], at 9-11.
[27] Order [July 7, 2025] ¶¶ 10-13; Plaintiffs' Brief [June 13, 2025], at 9-11.
[28] Order [July 7, 2025] ¶¶ 2, 14 (citing *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022)).
[29] Order [July 7, 2025] ¶¶ 2, 15.
[30] Amend. Pet. ¶ 2.

identifying specific damages in excess of $5 million.[31] Plaintiffs also renumbered their causes of action as follows:

> Count 1: breach of fiduciary duty
> Count 2: breach of contract (company agreement)
> Count 3: fraud/fraudulent inducement
> Count 4: breach of contract (cattle sales)
> Count 5: suit on sworn account
> Count 6: unjust enrichment.[32]

[¶ 17] On July 22, 2025, Defendants responded with additional briefing and by amending paragraph 1 of their supplemental answer.[33] The amendment to paragraph 1 maintains that the Court lacks jurisdiction over the entire action; argues that jurisdiction is lacking over any claims based on Malouff's personal guaranty; and asserts waiver and bar based on language in the guaranty.[34] Defendants also argue the amended petition still fails for the same reasons as the original petition; namely, that the jurisdictional allegations are conclusory and insufficient.[35]

## II. ANALYSIS

[¶ 18] The sole question before the Court is whether Plaintiffs' pleadings are sufficient to satisfy the $5 million amount in controversy requirement in Sections

---

[31] *Id.* ¶¶ 37-39, 43-46, 47-51.
[32] *Id.* ¶¶ 43-69.
[33] Amend. Supp. Answer; Defendants' Brief [July 22, 2025].
[34] Amend. Supp. Answer ¶ 1.
[35] Defendants' Brief [July 22, 2025] ¶ 11.

25A.004 (b)(1), (2), (4), and/or (5). As this is an issue of subject matter jurisdiction, it is ordinarily a question of law for the Court to decide.[36]

## A.    Applicable law

### 1.    Jurisdiction pursuant to Section 25A.004(b)

[¶ 19] Subsections (b)(1), (2), (4), and (5) grant this Court jurisdiction over the following actions in which the amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:

(1) a derivative proceeding;

(2)   an action regarding the governance, governing documents, or internal affairs of an organization;

.    .    .

(4) an action by an organization, or an owner of an organization, if the action:

(A)    is brought against an owner, controlling person, or managerial official of the organization; and

(B)   alleges an act or omission by the person in the person's capacity as an owner, controlling person, or managerial official of the organization; [and]

(5) an action alleging that an owner, controlling person, or managerial official breached a duty owed to an organization or an owner of an organization by reason of the person's status as an owner, controlling person, or managerial official, including the breach of a duty of loyalty or good faith[.][37]

---

[36] *C Ten*, 2025 Tex. Bus. 1, at ¶ 9, 708 S.W.3d at 230.
[37] TEX. GOV'T CODE ANN. §§ 25A.004(b)(1), (2), (4), and (5).

[¶ 20] The Court has previously held that Section 25A.004(b)'s amount-in-controversy requirement applies at the "action" level, considering all claims properly joined before the Court, rather than as a per-claim minimum.[38] The amount in controversy in an action is the sum of money or the value of the thing originally sued for.[39] The amount in controversy is frequently determined by the damages sought.[40]

## 2.      Standards for deciding a plea to the jurisdiction

[¶ 21] Defendants' jurisdictional challenge is singularly focused on the amount in controversy. In this circumstance, Texas courts follow well-established principles. When a defendant argues that the amount in controversy does not meet the jurisdictional threshold, the plaintiff's pleadings are determinative unless the defendant: (1) "pleads and proves that the plaintiff's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction"; or (2) can readily establish that the amount in controversy is outside the court's jurisdiction.[41]

---

[38] *C Ten*, 2025 Tex. Bus. 1, at ¶ 25, 708 S.W.3d at 234.

[39] *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) (quotation marks omitted); *C Ten*, 2025 Tex. Bus. 1, at ¶ 32, 708 S.W.3d at 237 (internal citation and quotation marks omitted).

[40] *Tune*, 23 S.W.3d at 361-62.

[41] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 n.4, 226 (Tex. 2004); *accord Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *ET Gathering & Processing LLC v. Tellurian Prod. LLC*, 2025 Tex. Bus. 11, ¶ 7, 709 S.W.3d 1, 4 (11th Div.) (quoting *Bland*, 34 S.W.3d at 554, and citing *Miranda*, 133 S.W.3d at 226*); *C Ten*, 2025 Tex. Bus. 1, at ¶ 46, 708 S.W.3d at 242 (citing *Miranda*, 133 S.W.3d at 223, and *Bland*, 34 S.W.3d at 554*).

[¶ 22] Thus, absent credible evidence of a fraudulent pleading or an amount in controversy outside the jurisdictional threshold, a challenge to the amount in controversy must ordinarily be decided solely on the pleadings.[42] The pleadings, moreover, are to be liberally construed in favor of jurisdiction.[43] The Texas Supreme Court has repeatedly cautioned that a plaintiff should not have to marshal its evidence or prove its claims to survive early jurisdictional challenges.[44]

[¶ 23] Here, Defendants have not pleaded, much less proved, that Plaintiffs' pleadings are fraudulent for purposes of obtaining jurisdiction or that a different amount in controversy is readily established.[45] In the absence of such challenges, the Court must limit its jurisdictional inquiry to the pleadings.[46]

## B. Jurisdiction exists pursuant to subsections (b)(1), (2), (4) and (5)

[¶ 24] Construing the amended petition liberally in favor of jurisdiction, the Court concludes that Plaintiffs have pleaded facts sufficient to satisfy the $5 million

---

[42] *C Ten*, 2025 Tex. Bus. 1, at ¶¶ 47-51, 708 S.W.3d at 243.

[43] *Id.*, 2025 Tex. Bus. 1, at ¶ 35, 708 S.W.3d at 238.

[44] *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012); *Bland*, 34 S.W.3d at 554.

[45] The closest that Defendants come to challenging the pleadings as fraudulent is a single statement in their opening jurisdictional brief that this dispute is about cattle sales, and that "[t]he rest [of the petition] was conclusory and/or sham assertions of millions at issue, which does not create jurisdiction." Defendants' Brief [June 27, 2025], at 10. After Plaintiffs amended their petition, Defendants did not repeat this allegation in their second jurisdictional brief, and in any event this single conclusory reference to "sham" assertions does not amount to "plead[ing] and prov[ing] fraud." *Miranda*, 133 S.W.3d at 224 n.4. Elsewhere, Defendants also label as a "sham" Malouff's pre-suit offer to sell his interest in ZMDR for $9.5 million. Defendants' Brief [June 27, 2025], at 16. But the Court did not give any consideration or weight to this pre-suit offer, or the value ascribed to the pre-suit offer, when making its jurisdictional determination.

[46] *Miranda*, 133 S.W.3d at 223.

threshold.[47] Of particular import are the breach-of-fiduciary-duty claim in Count 1, the breach-of-contract claim (company agreement) in Count 2, and the fraudulent-inducement claim in Count 3 and their supporting factual allegations.[48]

### 1.     Plaintiffs' factual allegations support jurisdiction

[¶ 25] The relevant factual allegations supporting Plaintiffs' claims for breach of fiduciary duty, breach of contract, and fraudulent inducement can be summarized as follows.

[¶ 26] Malouff contributed approximately $882,000 in cash and livestock to acquire his 33% interest in ZMDR, whereas Robinson and DeVito contributed only $10 for their respective 33% interests as members and managers of ZMDR.[49] Under ZMDR's company agreement, Robinson and DeVito, as managing members, retained "sole and exclusive control of the management, business and affairs of [ZMDR]" and were responsible for "maintaining the assets of [ZMDR] in good order" and timely "[…] paying debts and obligations of [ZMDR]."[50]

[¶ 27] DeVito's and Robinson's mismanagement resulted in myriad operational, regulatory, and legal problems that effectively bankrupted the company in a short period of time.[51] In December 2020, ZMDR reported assets—including

---

[47] Amend. Pet. ¶¶ 1, 46, 51, 61, 64-65.
[48] *Id.* ¶¶ 43-56.
[49] *Id.* ¶¶ 20-22.
[50] *Id.* ¶ 23.
[51] *Id.* ¶ 25.

real estate, fixtures, cattle equipment, and livestock—valued at $13,159,469.[52] By the end of 2022, the assets had grown to a reported value of $21,426,488.[53] Just two years later, at the end of 2024, the value of ZMDR's assets had plummeted to negative $3,982,504—a decline of more than $25 million.[54]

[¶ 28] According to the pleadings, this precipitous drop was caused by Defendants' "serial fraud, waste and abuse of corporate assts and other malfeasance such that ZMDR's business operations have been defunct for several months."[55] Plaintiffs allege Defendants subjected the company to multiple lawsuits and administrative proceedings and allowed money judgments to be abstracted.[56] Even more, under Defendants' management, ZMDR violated numerous health and safety regulations.[57] As a result, ZMDR forfeited its licenses to sell beef.[58] Most recently, ZMDR's meat-processing plant was scheduled for a foreclosure sale on July 16, 2025, potentially resulting in a distressed sale of ZMDR's single largest asset.[59]

[¶ 29] Plaintiffs also allege that Defendants' wrongful conduct has exposed Malouff to personal liability.[60] In December 2024, Malouff received a demand for

---

[52] *Id.* ¶ 26.
[53] *Id.*
[54] *Id.*; Plaintiffs' Brief [June 13, 2025], at 9.
[55] Amend. Pet. ¶ 30.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.* ¶ 38.
[60] *Id.* ¶ 37.

$11,682,266 from the lender that financed the real estate upon which ZMDR's plant is located.[61] The demand seeks to enforce a personal guaranty that Malouff made to secure the loan.[62]

### 2. Plaintiffs' legal claims support jurisdiction

[¶ 30] In their amended petition, Plaintiffs have now linked their factual allegations to their causes of action in a manner sufficient to support their requested relief, and, in so doing, to satisfy the amount-in-controversy requirement necessary for jurisdiction.

[¶ 31] In Count 1, Malouff asserts a claim for breach of fiduciary duty against Robinson and DeVito, both individually and derivatively on behalf of ZMDR.[63] This claim seeks to hold Robinson and DeVito liable for their alleged fiduciary breaches in the mismanagement of ZMDR. Plaintiffs propose to measure such damages in three ways. The first reflects the derivative claim on behalf of ZMDR and measures "damages in the form of asset diminution of not less than $19MM."[64] The second measures the individual harm to Malouff based on his 33% pro rata share of the $19 million in diminished assets.[65] The third measures the individual harm to Malouff based on his exposure to personal liability for ZMDR's debts, amounting to

---

[61] *Id.*
[62] *Id.*
[63] *Id.* ¶¶ 43-46.
[64] *Id.* ¶ 46.
[65] *Id.*

$11,682,266.[66] All three methods are sufficient to meet the $5 million jurisdictional threshold under each of subsections (b)(1), (2), (4), and (5).

[¶ 32] In Count 2, Malouff asserts a breach of contract claim based on Defendants' alleged failure to comply with ZMDR's company agreement.[67] This claim, too, seeks to hold Defendants liable for failing to pay ZMDR's obligations, failing to maintain ZMDR's assets, and failing to keep ZMDR compliant with health and safety laws.[68] Malouff proposes two ways to calculate his alleged damages for breach of contract. The first is the "loss of Malouff's pro rata value of his 33% ownership interest … based on ZMDR's 2022 corporate asset valuations of $21,426,487.79."[69] The second is the loss of his initial capital contribution of $882,000, plus out of pocket expenditures of $68,375.[70] The former method, when accepted as true for purposes of determining jurisdiction, is more than adequate to satisfy the $5 million threshold for jurisdiction under subsection (b)(2).

[¶ 33] In Count 3, Malouff asserts a claim for fraudulent inducement in connection with the company agreement, essentially on grounds that Defendants "had no intention of performing in accordance with" the agreement.[71] For this claim, Malouff seeks to recover benefit-of-the-bargain damages in an unspecified

---

[66] *Id.*
[67] *Id.* ¶¶ 47-51.
[68] *Id.* ¶ 50.
[69] *Id.* ¶ 51.
[70] *Id.*
[71] *Id.* ¶¶ 52-56.

amount.[72] It is a reasonable inference, then, that Malouff's measure of damages for fraudulent inducement parallel those for breach of contract, as in both instances the goal is to put a plaintiff in the same position they would have been in had the contract been performed.[73] Thus, benefit-of-the-bargain damages for fraudulent inducement would track those pleaded for breach of contract: the "loss of Malouff's *pro rata* value of his 33% ownership interest … based on ZMDR's 2022 corporate asset valuations of $21,426,487.79."[74]

[¶ 34] Taken as a whole, the pleadings allege that Defendants violated various contractual and fiduciary obligations by grossly mismanaging the business and fraudulently depleting the company's assets by more than $25 million in two years.[75] Plaintiffs seek to recover at least $19 million of this amount on behalf of ZMDR, or 33% of the same amount on behalf of Malouff individually.[76] Either way, the amount in controversy exceeds the $5 million threshold.

[¶ 35] The same is true for Plaintiffs' claim that Defendants must reimburse Malouff for any amounts he is required to pay based on his personal guaranty of

---

[72] *Id.* ¶ 56.

[73] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998) (holding that benefit-of-the-bargain damages for fraud "compensate[] for the profits that would have been made if the bargain had been performed as promised."); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("The purpose of the benefit-of-the-bargain measure of damages is to restore the injured party to the economic position it would have been in had the contract been fully performed.").

[74] Amend. Pet. ¶ 51.

[75] *Id.* ¶¶ 26, 30.

[76] *Id.* ¶¶ 46, 51.

ZMDR's debts. Plaintiffs plead that Malouff has received formal notice of a demand for payment of $11,682,266 from the lender used to secure and purchase the real estate on which ZMDR's plant is located.[77] That amount, too, far exceeds the Court's minimum jurisdictional limits.

[¶ 36] Defendants, in their briefing, have responded that they view these measures of recovery as highly implausible.[78] And indeed, some of the reasons given could be considered persuasive. Still, what matters at this stage is only whether Plaintiffs' pleadings—liberally construed—evidence an intent to recover damages exceeding the minimum jurisdictional limits, regardless of how likely such a recovery might be.[79] Defendants may ultimately be proved right about the merits of the case, but that is an issue for another day. For now, the Court is hard pressed to see how the jurisdictional threshold is not satisfied by allegations of "serial fraud, waste and abuse of corporate assets" totaling approximately $25 million and potential personal liability for Malouff of more than $11 million.[80]

[¶ 37] To be clear, in discussing the specific claims in Count 1, 2, and 3, the Court is not holding that *only* these claims satisfy subsection (b)'s jurisdictional prerequisites. As discussed, the jurisdictional inquiry occurs at the "action" level,

---

[77] *Id.* ¶ 37.

[78] Defendants' Brief [July 22, 2025] ¶¶ 3-10.

[79] *See Bland*, 34 S.W.3d at 554 ("The plaintiff's allegation of damages in excess of jurisdictional limits suffices to show the amount in controversy, even if damages cannot ultimately be proved at all.").

[80] Amend. Pet. ¶¶ 26, 30, 37, 46, 51.

not the claim level. Here, the "action," as that term is used in Section 25A.004(b), necessarily includes all claims challenging the management and internal affairs of ZMDR, the depletion of its assets, and the conduct of its managers.

### C. Supplemental jurisdiction alone would apply to the cattle sale claims

[¶ 38] Although Plaintiffs have established original jurisdiction over their claims related to the mismanagement of ZMDR, they have not done so with respect to their claims for amounts owed for livestock purchases. Plaintiffs assert four causes of action related to M&M's sale of cattle to ZMDR—fraud, breach of contract, suit on sworn account, and unjust enrichment.[81] The maximum damages pleaded for these claims is $1,690,225.[82]

[¶ 39] These claims do not implicate the Court's original jurisdiction under subsection (b) because they do not involve the internal affairs of the LLC, as required by the statute. The claims could, however, fall within the Court's supplemental jurisdiction under subsection (f). The parties, in their respective briefing, expressed the same view.[83] The question, then, is whether Defendants will agree—or have already agreed—to the application of supplemental jurisdiction.[84] This is an issue for a later date, as addressed at the conclusion of this order.

---

[81] *Id.* ¶¶ 53-69.

[82] *Id.* ¶¶ 61, 64-65.

[83] Plaintiffs' Brief [June 13, 2025], at 15-17; Defendants' Brief [June 27, 2025], at 8-10, 22-25.

[84] Section 25A.004(f) provides that "a claim within the business court's supplemental jurisdiction may proceed in the business court only on the agreement of all parties to the claim and [the court.]" TEX. GOV'T CODE ANN. § 25A.004(f). As Plaintiffs point out, the parties seemingly agreed in their Initial Case Status

### III. CONCLUSION

[¶ 40] Consistent with this Memorandum Opinion, the Court denies Defendants' Plea.

[¶ 41] Further, pursuant to Section 25A.004(f), the parties are ordered to notify the Court by August 15, 2025, whether they agree to the Court's exercise of supplemental jurisdiction over Plaintiffs' claims related to the cattle sales in dispute.

SO ORDERED.

_____
Brian Stagner
Judge of the Texas Business Court,
Eighth Division

SIGNED: August 4, 2025

---

Report that "[t]here are no challenges to jurisdiction or venue. All of Plaintiffs' claims … fall within the Court' subject matter jurisdiction. Thus, no claims fall exclusively within the Court's supplemental jurisdiction." Plaintiffs' Brief [June 13, 2025], at 17; Initial Case Status Report ¶ 6. Defendants, through their new counsel, contend they have not yet consented to any exercise of supplemental jurisdiction and that the parties' prior statement was a "mutual mistake" based on a shared belief that there were no claims within the Court's supplemental jurisdiction. Defendants' Brief [June 27, 2025], at 23.